IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>RICHARDSON M. ROBERTS et al.,<br><br>Defendants. | Civil Action No. 3:09-0812<br><br>Judge Sharp<br><br>Magistrate Judge Brown |

## <u>CONSENT DECREE</u>

WHEREAS, Plaintiff United States of America ("United States"), at the request of the United States Environmental Protection Agency ("EPA"), filed a complaint in this action, subsequently superseded and amended ("Amended Complaint"), alleging that Defendants Richardson M. Roberts and Bucksnort RR Ranch LLC ("Defendants") violated Clean Water Act ("CWA") section 301(a), 33 U.S.C. § 1311(a);

WHEREAS, the Amended Complaint alleges that Defendants violated CWA section 301(a) by discharging dredged or fill material into waters of the United States in Humphreys County, Tennessee, without authorization by the United States Army Corps of Engineers ("Corps"), in connection with the construction of a dam and consequent impoundment;

WHEREAS, the Amended Complaint requests that the Court award a civil penalty and injunctive relief;

WHEREAS, Defendants do not admit any liability to the United States arising out of the transactions or occurrences alleged in the Amended Complaint; and

1

WHEREAS, the Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and will avoid further litigation between the United States and Defendants, and that this Consent Decree is fair, reasonable, and in the public interest.

THEREFORE, before the taking of additional testimony upon the pleadings, without the adjudication or admission of any issue of fact or law except as provided in Section I of this Consent Decree, and upon consent of the Parties hereto by their authorized representatives, it is hereby ORDERED, ADJUDGED and DECREED as follows:

## I. JURISDICTION, VENUE, AND SUFFICIENCY OF COMPLAINT

1.      This Court has jurisdiction over the subject matter of this action and over the Parties pursuant to 28 U.S.C. §§ 1331, 1345, and 1355, and CWA section 309(b), 33 U.S.C. § 1319(b).

2.      Venue lies in the Middle District of Tennessee pursuant to CWA section 309(b), 33 U.S.C. §§ 1319(b), and 28 U.S.C. §§ 1391(b) and (c).

3.      For purposes of this Consent Decree, and any action to enforce this Consent Decree, Defendants consent to the Court's jurisdiction over this Consent Decree, over any such action to enforce this Consent Decree, and over Defendants, and Defendants consent to venue in this judicial district.

4.      For purposes of this Consent Decree, and any action to enforce this Consent Decree only, the Parties agree, and the Court finds, that the Amended Complaint states a claim upon which relief can be granted pursuant to CWA sections 301(a) and 309(d), 33 U.S.C. §§ 1311(a) and 1319(d).

2

## II. APPLICABILITY

5.      This Consent Decree applies to and is binding upon the United States, and upon Defendants and any successors, assigns, or other persons otherwise bound by law whether or not such person has notice of this Consent Decree.

6.      Defendants shall provide a copy of this Consent Decree to all officers, employees, and agents whose duties might reasonably include compliance with any provision of this Consent Decree, including, for example, any contractor or consultant retained to perform Work or monitoring and maintenance.  Defendants shall condition any such contract upon performance of tasks in conformity with the terms of this Consent Decree.

7.      In any action to enforce this Consent Decree, Defendants shall not raise as a defense the failure by any of their officers, directors, employees, agents, contractors, or consultants to take any actions necessary to comply with this Consent Decree.

8.      No transfer by Defendants of any interest or right in the Site shall alter or relieve Defendants of their obligations in this Consent Decree.  At least thirty (30) Days prior to any transfer of interest or right in the Site, Defendants shall provide written notice of the prospective transfer, together with a copy of the proposed written agreement, to the United States at the addresses specified in Section XI of this Consent Decree.  As a condition of any such transfer, Defendants shall reserve all rights necessary to comply with this Consent Decree.  To the extent that Defendants propose to assign any obligation in this Consent Decree to the transferee(s), Defendants shall also, as a condition of any such transfer, obtain written consent to such assignment from the transferee(s) and the United States.  Regardless, in the event of such transfer, Defendants shall provide a true copy of this Consent Decree to the transferee(s) and shall simultaneously notify the United States at the addresses specified in Section XI of this

Consent Decree that such notice has been given. Any transfer by Defendants of any of Defendants' interests or rights in the Site without complying with this Paragraph constitutes a violation of this Consent Decree.

### III. DEFINITIONS

9. Terms used in this Consent Decree that are defined in the CWA or in regulations promulgated pursuant to the CWA shall have the meanings assigned to them in the statute or such regulations, unless otherwise provided in this Consent Decree.

10. Whenever the terms set forth below are used in this Consent Decree, the definitions in the following subparagraphs shall apply.

a. "Amended Complaint" shall mean the amended complaint the United States filed in this action on or about May 20, 2010 (Dkt. No. 14).

b. "CWA" shall mean the Clean Water Act, 33 U.S.C. §§ 1251-1387.

c. "Consent Decree" shall mean this Consent Decree; all Appendices attached hereto and listed in Section XX of this Consent Decree; all Deliverables approved by EPA in accordance with Section XIV of this Consent Decree; and all modifications made effective in accordance with Section XV of this Consent Decree.

d. "Conserved Property" shall mean approximately 42 acres of buffered streams and watercourses within the Site as illustrated in Appendix A to this Consent Decree; the Appendix's legend refers to these areas as "Buffered Streams and Watercourses" and "30 and 50 ft. Watercourse Buffers."

e. "Corps" shall mean the United States Army Corps of Engineers and any of its successor departments or agencies.

4

f.    "Day" shall mean a calendar day unless expressly stated to be a business day.  In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal holiday, the period shall run until the close of business of the next working day.

g.    "Defendants" shall mean Richardson M. Roberts and Bucksnort RR Ranch LLC.

h.    "Deliverable" shall mean Defendants' proposal to meet the requirements of Paragraph 23 of this Consent Decree; draft deed restriction or other appropriate land use instrument; restoration plan; monitoring and maintenance plan; monitoring and maintenance report; or any other document that is submitted to EPA for its review and approval pursuant to Section XIV of this Consent Decree.

i.    "EPA" shall mean the United States Environmental Protection Agency and any of its successor departments or agencies.

j.    "Effective Date" shall mean the date on which this Consent Decree is entered by the Court (i.e., not any earlier date on which the Parties sign this Consent Decree).

k.    "Paragraph" shall mean a portion of this Consent Decree identified by an Arabic numeral;

l.    "Parties" shall mean the United States and Defendants.

m.    "Section" shall mean, except when citing a provision of the CWA or regulations, a portion of this Consent Decree identified by a Roman numeral.

n.    "Site" shall mean real property comprised of approximately two thousand four hundred (2,400) acres and owned or controlled by Defendants in Humphries County and Hickman County, Tennessee.  Most of the Site is illustrated in Appendix A to this Consent Decree; the Appendix's legend refers to it as "Approximate Property Boundary."

5

o.     "Snake Creek" shall mean the body of water that traverses through Egypt Hollow and connects to Tumbling Creek, which, in turn, connects to the Duck River.  Snake Creek is sometimes referred to as the Egypt Hollow tributary or an unnamed tributary of Tumbling Creek.

p.     "United States" shall mean Plaintiff United States of America.

q.     "Water Quality Data" shall mean ambient, in-stream water quality data; benthic macro-invertebrate sampling; and analyses of same.

r.     "Work" shall mean on-the-ground restoration activities that Defendants are required to perform, or otherwise agree to undertake, pursuant to Paragraph 25 of this Consent Decree.

## IV.  GENERAL PROVISIONS

11.     This Consent Decree shall constitute a complete and final settlement and resolution of the claims of the United States within the scope of the Amended Complaint.

12.     It is the express purpose of the Parties in entering this Consent Decree to further the objectives set forth in CWA section 101, 33 U.S.C. § 1251.

13.     Defendants' obligations under this Consent Decree are joint and several.

14.     The Parties acknowledge that, upon entry of this Consent Decree, Nationwide Permit 32, part ii found at 77 Fed. Reg. 10,184 (Feb. 21, 2012), will provide CWA section 404 authorization, subject to the conditions provided in the Nationwide Permit and this Consent Decree, for any dredged or fill material that was placed at the Site in conjunction with discharges alleged to be violations of the CWA in the Amended Complaint (i.e., discharges in connection with the construction of the dam and consequent impoundment).  The Parties further acknowledge that Nationwide Permit 32 provides CWA section 404 authorization for the discharge of dredged or fill material insofar as such discharge is necessary for restoration Work

6

in Snake Creek (i.e., the requirements of Paragraph 25 of this Consent Decree), with such authorization being subject to the conditions provided in Nationwide Permit 32 and this Consent Decree.

15.     Except as provided in Paragraph 14, this Consent Decree is not and shall not be interpreted to be a permit or modification of any existing permit issued pursuant to any federal, state, or local laws or regulations.

16.     (This Paragraph is intentionally omitted.)

17.     This Consent Decree in no way affects the rights of the United States as against any person not a party to this Consent Decree.

18.     The United States reserves any and all legal and equitable remedies available to enforce this Consent Decree.  This Consent Decree shall not be construed to limit the rights of the United States to obtain remedies under the CWA or its implementing regulations, or under other federal laws, regulations, or permit conditions, except as expressly specified in Paragraph 11 of this Consent Decree.

19.     Except as provided in Section I of this Consent Decree, nothing in this Consent Decree shall constitute an admission of fact or law by any party.

## V.  SPECIFIC PROVISIONS

### CIVIL PENALTY

20.     Within thirty (30) Days of the Effective Date of this Consent Decree, Defendants shall pay a civil penalty to the United States in the amount of twenty five thousand dollars ($25,000).

21.     Payment to the United States shall be made in accordance with written instructions to be provided to Defendants by the United States Department of Justice following

7

entry of this Consent Decree. Upon payment, Defendants shall provide written notice to the United States at the addresses specified in Section XI of this Consent Decree.

22. Defendants shall not deduct any penalties paid under this Consent Decree pursuant to this Section or Section X in calculating any federal income tax owed.

<u>INJUNCTIVE RELIEF</u>

23. <u>Funding to Benefit Water Quality in Lower Duck River Watershed</u>: Defendants shall provide funding in the total amount of two hundred fifteen thousand dollars ($215,000) to one or more programs benefitting water quality in the Lower Duck River watershed in accordance with sub-Paragraphs 23a, 23b, and 23c below. Examples of programs benefitting water quality in the Lower Duck River watershed include the Tennessee Stream Mitigation Program (Sugar Creek project) and the Land Trust for Tennessee (Duck River initiative).

a. Within sixty (60) Days of the Effective Date of this Consent Decree, Defendants shall submit to EPA, for its review as a Deliverable pursuant to Section XIV of this Consent Decree, the name of and contact information regarding the program to which Defendants propose to provide funding in the amount of fifteen thousand dollars ($15,000). Within ten (10) Days of EPA's approval of Defendants' proposal pursuant to Section XIV of this Consent Decree, Defendants shall provide funding in that amount.

b. Within eighteen months of the Effective Date of this Consent Decree, Defendants shall submit to EPA, for its review as a Deliverable pursuant to Section XIV of this Consent Decree, the name of and contact information regarding the program(s) to which Defendants propose to provide additional funding in the amount of one hundred thousand dollars ($100,000). Within ten (10) Days of EPA's approval of Defendants' proposal pursuant to Section XIV of this Consent Decree, Defendants shall provide funding in that amount.

8

c.      Within three years of the Effective Date of this Consent Decree, Defendants shall submit to EPA, for its review as a Deliverable pursuant to Section XIV of this Consent Decree, the name of and contact information regarding the program(s) to which Defendants propose to provide additional funding, again in the amount of one hundred thousand dollars ($100,000). Within ten (10) Days of EPA's approval of Defendants' proposal pursuant to Section XIV of this Consent Decree, Defendants shall provide funding in that amount.

d.      Promptly after each provision of funding – i.e., the initial funding of $15,000 (Paragraph 27a); the subsequent funding of $100,000 (Paragraph 27b); and the last funding of $100,000 (Paragraph 27c) – Defendants shall provide evidence of their provision of funding and receipt of funds by the appropriate program administrator(s) to the United States at the addresses specified in Section XI of this Consent Decree.

24.      <u>Preservation of the Conserved Property</u>:

a.      Within thirty (30) Days of the Effective Date of this Consent Decree, Defendants shall submit to EPA, for its review as a Deliverable pursuant to Section XIV of this Consent Decree, a draft deed restriction, restrictive covenant, conservation easement, or other appropriate land use instrument designed to ensure, except as necessary for Work, the preservation of the Conserved Property in perpetuity as purely natural.  The instrument shall run with the land and bind Defendants and their heirs, personal representatives, successors, and assigns.  The instrument shall provide the United States with the right to enforce it by appropriate legal proceedings, including but not limited to enforcement of this Consent Decree.  The instrument may reserve to Defendants and their heirs, personal representatives, successors, and assigns the right to quiet enjoyment of the Conserved Property; the right of ingress and egress thereto; the right to maintain current existing roads, trails, and crossings for motorized vehicles and farm

9

equipment (provided that Defendants provide photographs of these roads, trails, and crossings before or as part of their Deliverable); the right to hunt, fish, and hike; and any other right consistent with preserving the Conserved Property in perpetuity as a purely natural. Within thirty (30) Days of EPA's approval of the instrument pursuant to Section XIV of this Consent Decree, Defendants shall execute and record the instrument, as well as a true and correct copy of this Consent Decree, with the recorder of deeds office in Humphreys County. Upon such recording, Defendants shall promptly provide written notice of such completion, along with a true and correct copy of the recorded instrument, to the United States at the addresses specified in Section XI of this Consent Decree. Thereafter, each deed, title, conservation easement, or other instrument conveying an interest in any portion of the Conserved Property shall (a) contain a notice stating that the Conserved Property is subject to this Consent Decree and EPA-approved instrument; and (b) refer to the recorded location of this Consent Decree and EPA-approved instrument.

b.        Except as necessary for Work, Defendants shall not disturb -- or allow any other person to disturb – any portion of the Conserved Property in any manner inconsistent with preserving the Conserved Property in perpetuity as purely natural.

25.        <u>Restoration Work</u>:

a.        Within thirty (30) Days of the Effective Date of this Consent Decree, Defendants shall provide to the United States, at the addresses specified in Section XI of this Consent Decree, all Water Quality Data -- not previously produced to the United States -- collected by Defendants from the segment of Snake Creek that begins at the western (i.e., downstream) side of the dam, at the toe of the dam, and continues downstream to the boundary of the Site. Upon approval and entry of this Consent Decree, Defendants shall collect Water Quality Data from the

foregoing segment of Snake Creek, to the extent such Water Quality Data may inform a restoration plan, and then provide such Water Quality Data to the United States within sixty (60) Days of the Effective Date of this Consent Decree. EPA may require Defendants to collect additional Water Quality Data to inform its review of a restoration plan.

b.    Within ninety (90) Days of the Effective Date of this Consent Decree, Defendants shall submit to EPA, for its review as a Deliverable pursuant to Section XIV of this Consent Decree, a restoration plan to benefit water quality for the segment of Snake Creek that begins at the western (i.e., downstream) side of the dam, at the toe of the dam, and continues downstream to the boundary of the Site. The extent, location, and nature of the Work shall reflect Water Quality Data and any other relevant information concerning the environmental condition of that segment of Snake Creek. The Work shall include the construction of a small treatment wetland and restoration and enhancement of the riparian buffer along Snake Creek and Snake Creek Tributaries. The treatment wetland will be constructed in the relict channel of Snake Creek beginning at the toe of the descending slope of the dam and extending to the mouth of the impoundment discharge channel. The initial purpose of the wetland is to reduce visible iron precipitation in the channel in the vicinity immediately downstream of the impoundment. The Work shall also include the restoration of riparian buffer in selected areas devoid of or sparsely filled with canopy or shrub vegetation. Subject to Paragraph 25c of this Consent Decree, excessively narrow riparian buffer segments will be expanded and enhanced to further protect Snake Creek and Snake Creek Tributaries. Riparian canopy vegetation will be planted randomly on approximate 12 to 15-foot centers. Proposed woody canopy and shrub species include a mix of native species such as *Acer rubrum* (Red Maple), *Acer saccharum* (Sugar Maple), *Alnus serrulata* (Smooth Alder), *Asimina triloba* (Pawpaw), *Betula nigra* (River Birch), *Carya ovata*

11

(Shagbark Hickory), *Cephalanthus occidentalis* (Buttonbush), and *Diospyros virginiana* (Persimmon). The final species selection will be based on nativity to the region and availability at the time of planting.  The areas of Work are identified in Appendix B to this Consent Decree.

c.     Defendants shall pay sixty thousand dollars ($60,000) for Work, and Defendants shall ensure the completion of Work in accordance with the EPA-approved restoration plan.  The foregoing amount shall include costs associated with the actual performance of Work, monitoring, and maintenance, but that amount does not include costs associated with the preparation of any restoration plan, monitoring and maintenance plan, or monitoring and maintenance report.  If Defendants are able to complete Work, monitoring, and maintenance for less than $60,000, Defendants shall use the balance to provide funding to one or more programs benefitting water quality in the Lower Duck River watershed (i.e., the same program(s) EPA approved for funding pursuant to Paragraph 23 of this Consent Decree) and promptly provide evidence of the provision of funding and receipt of funds by the appropriate program administrator(s) to the United States at the addresses specified in Section XI of this Consent Decree.  If necessary Work, monitoring, and maintenance is expected to cost more than $60,000, Defendants shall submit to EPA, for its review as a Deliverable pursuant to Section XIV of this Consent Decree, a proposal for deducting the overage from Defendants' obligations under Paragraph 23 of this Consent Decree.

d.     Upon completion of the Work, Defendants shall promptly provide written notice to the United States at the addresses specified in Section XI of this Consent Decree.

26.     <u>Monitoring and Maintenance</u>:

a.     Within ninety (90) Days of the Effective Date of this Consent Decree, Defendants shall submit to EPA, for its review as a Deliverable pursuant to Section XIV of this Consent

Decree, a monitoring and maintenance plan for the segment of Snake Creek that begins at the western (i.e., downstream) side of the dam, at the toe of the dam, and continues downstream to the boundary of the Site. The plan shall propose, among other things, locations and parameters for monitoring, actions to address any failure to meet success criteria, and deadlines for the completion of monitoring and maintenance.

      b.      For a period not to exceed five years, Defendants shall monitor and maintain the segment of Snake Creek that begins at the western (i.e., downstream) side of the dam, at the toe of the dam, in accordance with an EPA-approved monitoring and maintenance plan. Notwithstanding the foregoing sentence, Defendants may request that monitoring and maintenance conclude after three years, and EPA shall grant the request if Defendants demonstrate, to EPA's reasonable satisfaction, that the Work meets success criteria.

      c.      Upon completion of monitoring and maintenance, Defendants shall promptly provide written notice to the United States at the addresses specified in Section XI of this Consent Decree.

## VI. <u>REPORTS</u>

27.      Defendants shall submit monitoring and maintenance reports to EPA for its review as a Deliverable pursuant to Section XIV of this Consent Decree. Each report shall address monitoring and maintenance efforts and results; problems encountered or anticipated, together with implemented or proposed solutions; and such other information as required by the monitoring and maintenance plan approved by EPA in accordance with Paragraph 26 of this Consent Decree. Unless a different schedule is set forth in the monitoring and maintenance plan approved by EPA in accordance with Paragraph 26 of this Consent Decree, Defendants shall submit their first report to EPA six months after completing Work in Snake Creek, and shall

submit subsequent reports annually for the next five years. Notwithstanding the foregoing

sentence, Defendants may request that reporting conclude after three years, and EPA shall grant

the request if Defendants demonstrate, to EPA's reasonable satisfaction, that the Work meets

success criteria.

28. Each monitoring and maintenance report shall be signed by an individual who

constitutes a "responsible corporate officer" or "duly authorized representative" within the

meaning of 40 C.F.R. § 122.22(a)(1)-(3), (b), and it shall include the following certification:

> "I certify under penalty of law that this document and all attachments were prepared
>
> under my direction or supervision. The information submitted is, to the best of my
>
> knowledge and belief, true, accurate, and complete."

29. The reporting requirements of this Consent Decree do not relieve Defendants of

any reporting obligations required by the CWA or its implementing regulations, or by any other

federal, state, or local law, regulation, permit, or other requirement.

30. Any information provided pursuant to this Consent Decree may be used by the

United States in any proceeding to enforce the provisions of this Consent Decree and as

otherwise permitted by law.

## VII. RETENTION OF RECORDS AND RIGHT OF ENTRY

31. Until three (3) years after the termination of this Consent Decree pursuant to

Section XVI, Defendants shall retain, and shall instruct their contractors, consultants, and other

agents to preserve, all non-identical copies of all documents, records, or other information

(including documents, records, or other information in electronic form) in their or their

contractors' or other agents' possession or control, or that come into their contractors' or other

agents' possession or control, and that relate in any manner to Defendants' performance of their

obligations under this Consent Decree.  At any time during this information-retention period, upon request by the United States, Defendants shall provide copies of any documents, records, or other information required to be maintained under this Paragraph.

32.     After providing reasonable advance written notice, the United States shall have the right of entry on the Site as necessary to review the plans, reports, Water Quality Data, and other information submitted by Defendants to the United States or EPA.  Similarly, after providing reasonable advance written notice, the United States shall have the right of entry on the Site if the United States has reason to believe that Defendants are not acting in compliance with this Consent Decree, or that activities are occurring inconsistent with the preservation of the Conserved Property in perpetuity as a purely natural area.

33.     This Consent Decree does not affect any other rights of entry and inspection, or any rights to obtain information, held by the United States pursuant to applicable federal laws, regulations, or permits, nor does it limit or affect any duty or obligation of Defendants to maintain documents, records, or other information imposed by applicable federal or state laws, regulations, or permits.

## VIII.  DISPUTE RESOLUTION

34.     Unless otherwise expressly provided for in this Consent Decree, the Parties shall attempt to resolve any and all disputes arising under or with respect to this Consent Decree through the dispute resolution procedures of this Section ("Dispute Resolution").

35.     A dispute shall be considered to have arisen when a written Notice of Dispute is transmitted to the opposing party at the addresses specified in Section XI.  Such Notice of Dispute shall state clearly the matter in dispute.

36.     If after thirty (30) Days of transmittal of the Notice of Dispute, the complainant concludes that the Parties have reached an impasse, then the complainant may seek resolution of the dispute by the Court.  The Parties may continue to attempt to resolve the Notice of Dispute while the matter is pending before the Court.

37.     The invocation of Dispute Resolution procedures under this Section shall not, by itself, extend, postpone, or affect in any way any obligation of Defendants under this Consent Decree.  Stipulated penalties and interest, if applicable to the disputed matter, shall continue to accrue from the first Day of violation, but payment shall be stayed pending resolution of the dispute as provided in Section X.  If Defendants do not prevail on any disputed issue, stipulated penalties, and interest, if applicable, are to be assessed and paid as provided in Section X.  If determined by the Court that Defendants did not violate the Consent Decree, no stipulated penalty or interest shall be assessed against Defendants.

## IX. FORCE MAJEURE

38.     "Force majeure," for purposes of this Consent Decree, is defined as any event arising from causes beyond the control of Defendants, of any person controlled by Defendants, or of Defendants' contractors or consultants, that delays or prevents the performance of any obligation under this Consent Decree despite Defendants' best efforts to fulfill the obligation.

39.     If any event occurs or has occurred that may delay the performance of any obligation under this Consent Decree, whether or not caused by a force majeure event, Defendants shall provide notice to the United States, at the addresses specified in Section XI, within a reasonable time after Defendants first knew or should have known that the event might cause a delay.  Defendants shall also provide an explanation and description of the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or

minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; Defendants' rationale for attributing such delay to a force majeure event if they intend to assert such a defense; and a statement as to whether, in the opinion of Defendants, such event may cause or contribute to an endangerment to public health, welfare or the environment.  Defendants shall include with any written notice required by this Section all available documentation.

40.     If the United States agrees that the delay or anticipated delay is attributable to a force majeure event, the time for performance of the obligations under this Consent Decree that are affected by the force majeure event may be extended for such time as is necessary to complete those obligations.

41.     If the United States does not agree that the delay or anticipated delay has been or will be caused by a force majeure event, or does not agree to the extension of time sought by Defendants, then Defendants may invoke Dispute Resolution under Section VIII of this Consent Decree.

42.     If Defendants invoke Dispute Resolution under Section VIII of this Consent Decree, Defendants shall have the burden of demonstrating that the delay or anticipated delay has been or will be caused by a force majeure event; the number of Days of delay or anticipated delay that was or will be caused by such force majeure event; that the duration of the delay or the extension sought was or will be warranted under the circumstances; that Defendants could not have foreseen and prevented such delay; that Defendants exercised best efforts to prevent, avoid, minimize and mitigate the delay and its effects; and that Defendants complied with the requirements of this Section.

## X. STIPULATED PENALTIES

43. Defendants shall be liable for stipulated penalties to the United States for violations of this Consent Decree in accordance with this Section, unless excused under Section IX (Force Majeure). A violation includes failing to perform any obligation required by this Consent Decree, including the terms of any Deliverable or modification approved under this Consent Decree, within the specified time schedules established by or approved under this Consent Decree.

44. Stipulated penalties shall accrue for violating this Consent Decree in the amount of five hundred dollars ($500) per Day.

45. Stipulated penalties under this Section shall begin to accrue on the Day a violation occurs and shall continue to accrue until the violation ceases.

46. Except as provided in Paragraphs 48 and 49 below, Defendants shall pay any stipulated penalty within thirty (30) Days of receiving the United States' written demand. Defendants shall make any such payment in accordance with written instructions to be provided by the United States. Upon any such payment, Defendants shall provide written notice to the United States at the addresses specified in Section XI of this Consent Decree.

47. The United States may reduce or waive stipulated penalties that have accrued under this Consent Decree.

48. Any disputes concerning the amount of stipulated penalties or the underlying violation that gives rise to the assessment of stipulated penalties are subject to the Dispute Resolution provisions of Section VIII. Stipulated penalties and any applicable interest shall continue to accrue as provided in this Consent Decree, but need not be paid until the following:

18

a. If the dispute is resolved by agreement between the Parties, Defendants shall pay the amount due under such agreement, together with any applicable interest, to the United States within thirty (30) Days of the effective date of the agreement.

b. If the dispute is taken to the Court, Defendants shall pay all accrued penalties determined by the Court to be owing, together with any applicable interest, to the United States within thirty (30) Days of receiving the Court's decision, except as provided in subparagraph c, below.

c. If any party appeals the Court's decision to the Court of Appeals (or beyond), Defendants shall pay all accrued penalties determined to be owing, together with any applicable interest, to the United States within fifteen (15) Days of receiving the final appellate decision.

49. If Defendants fail to pay stipulated penalties in accordance with this Consent Decree, Defendants shall be liable for interest on such penalties, as provided for in 28 U.S.C. § 1961, accruing as of the date payment became due. The interest shall be computed daily from the time the payment is due until the date the payment is made. The interest shall also be compounded annually. Nothing in this Paragraph shall be construed to limit the United States from seeking any remedy otherwise provided by law for Defendants' failure to pay any stipulated penalties.

50. The stipulated penalties provided for in this Consent Decree shall be in addition to any other rights, remedies, or sanctions available to the United States for Defendants' violation of this Consent Decree or applicable law.

## XI. ADDRESSES

51. All notices and communications required under this Consent Decree shall be made to the Parties through each of the following persons and addresses:

a.    <u>TO THE UNITED STATES</u>:

      i.    TO THE DEPARTMENT OF JUSTICE:

           Paul Cirino
           Andrew J. Doyle
           Dustin J. Maghamfar
           United States Department of Justice
           Environment and Natural Resources Division
           Environmental Defense Section
           P.O. Box 7611
           Washington, DC   20044
           (202) 514-1542 (phone; Cirino)
           (202) 514-4427 (phone; Doyle)
           (202) 514-1806 (phone; Maghamfar)
           paul.cirino@usdoj.gov
           andrew.doyle@usdoj.gov
           dustin.maghamfar@usdoj.gov

      ii.    TO EPA:

           Philip G. Mancusi-Ungaro
           Attorney-Advisor
           United States Environmental Protection Agency
              Region 4
           61 Forsyth Street, SW
           Atlanta, GA  30303
           (404) 562-9519 (p)
           mancusi-ungaro.philip@epa.gov

b.    <u>TO DEFENDANTS</u>:

    JONES HAWKINS & FARMER, PLC
    William H. Farmer
    William Burgin Hawkins, III
    150 Fourth Avenue North, Suite 1820
    Nashville, TN  37219
    (615) 726-0050 (p)
    bfarmer@joneshawkinsfarmer.com
    whawkins@joneshawkinsfarmer.com

    Richard M. Roberts
    Bucksnort RR Ranch LLC
    2207 Old Hickory Blvd.
    Nashville, TN  37215-5309
    rich@robertsr.net

52.     Any party may, by written notice to the other party, change its designated notice recipient or notice address provided above.

53.     Notices submitted pursuant to this Section shall be deemed submitted upon mailing, unless otherwise provided in this Consent Decree or by mutual agreement of the Parties in writing.  In addition to serving by mail, the Parties shall also send a courtesy email.

## XII.  COSTS OF SUIT

54.     The Parties shall bear their own costs and attorneys' fees in this action to date.

## XIII.  PUBLIC COMMENT

55.     The Parties acknowledge that after the lodging and before the entry of this Consent Decree, final approval by the United States is subject to the requirements of 28 C.F.R. § 50.7, which provides for public notice and comment.  The United States reserves the right to withhold or withdraw its consent to the entry of this Consent Decree if the comments received disclose facts or considerations which lead the United States to conclude that the proposed judgment is inappropriate, improper, or inadequate.  Defendants agree not to withdraw from, oppose entry of, or to challenge any provision of this Consent Decree, unless the United States has notified Defendants in writing that it no longer supports entry of the Consent Decree. Defendants consent to entry of this Consent Decree in its present form without further notice.

## XIV.  REVIEW OF DELIVERABLES

56.     After Defendants submit any Deliverable to EPA, EPA shall in writing within ninety (90) Days either (a) approve the Deliverable or (b) disapprove the Deliverable.

57.     If EPA approves the Deliverable, Defendants shall take all actions required by the Deliverable, in accordance with the schedules and requirements of the Deliverable, as approved.

58. If the Deliverable is disapproved, Defendants shall, within thirty (30) Days, or such other time as the Parties agree to in writing, correct all deficiencies and resubmit the Deliverable for approval in accordance with the preceding Paragraphs in this Section of the Consent Decree. If the Deliverable regards the Land Trust of Tennessee, the foregoing default deadline shall be sixty (60) Days. If the resubmitted Deliverable is approved, Defendants shall proceed in accordance with Paragraph 57 above. If the resubmitted Deliverable is disapproved, EPA may again require Defendants to correct any deficiencies in accordance with the preceding Paragraphs in this Section of the Consent Decree. Defendants have the right to invoke Dispute Resolution under Section VIII of this Consent Decree if EPA unreasonably withholds its approval.

## XV. MODIFICATION

59. The terms of this Consent Decree may be modified only by a subsequent written agreement signed by all the Parties. Where the modification constitutes a material change to any term of this Consent Decree, it shall be effective only upon the Court's approval.

## XVI. TERMINATION

60. After Defendants have completed the requirements of Section V of this Consent Decree and have paid any outstanding stipulated penalties, Defendants may submit to the United States, at the addresses specified in Section XI of this Consent Decree, a Request for Termination, stating that Defendants have satisfied those requirements, together with supporting documentation.

61. Following the United States' receipt of Defendants' Request for Termination, the Parties may confer informally concerning the Request and any disagreement that the Parties may have as to whether Defendants have satisfactorily complied with the requirements for

termination of this Consent Decree.  If the United States agrees that the Consent Decree may be terminated, the Parties shall submit, for the Court's approval, a joint stipulation terminating the Consent Decree.

62.     The United States may have up to ninety (90) Days to evaluate Defendants' request for termination, but the United States shall not unreasonably withhold its agreement that the Consent Decree qualifies for termination.  However, if the United States determines that the Consent Decree may not be terminated, Defendants may invoke Dispute Resolution under Section VIII of this Consent Decree.

63.     Termination of this Consent Decree does not extinguish the requirement set forth in Paragraph 24b of this Consent Decree or the deed restriction or other appropriate land use instrument recorded pursuant to Paragraph 24a of this Consent Decree.

64.     Termination of this Consent Decree does not discharge Defendants of their obligations set forth in Section VII of this Consent Decree.

XVII.  <u>SIGNATORIES/SERVICE</u>

65.     Each undersigned representative of Defendants and the United States Department of Justice certifies that he is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind the party he represents to this document.

66.     This Consent Decree may be signed in counterparts, such counterpart signature pages shall be given full force and effect, and its validity shall not be challenged on that basis. Defendants agree to accept service of process by mail with respect to all matters arising under or relating to this Consent Decree and to waive the formal service requirements set forth in the Federal Rules of Civil Procedure and any applicable Local Rules of this Court including, but not limited to, service of a summons.

## XVIII.  INTEGRATION

67.    This Consent Decree constitutes the final, complete, and exclusive agreement and understanding among the Parties with respect to the settlement embodied in the Consent Decree and supersedes any prior agreements and understandings, whether verbal or written, concerning the settlement embodied herein.  Other than Appendices, Deliverables approved by EPA in accordance with Section XIV of this Consent Decree, and modifications made effective in accordance with Section XV of this Consent Decree, no other document, nor any representation, inducement, agreement, understanding, or promise, constitutes any part of this Consent Decree or the settlement it represents, nor shall it be used in construing the terms of this Consent Decree.

## XIX.  FINAL JUDGMENT, PENDING MOTIONS, AND RETENTION OF JURISDICTION

68.    Upon its approval and entry, this Consent Decree shall constitute a final judgment of the Court as to the United States and Defendants.

69.    Defendants' Motion to Dismiss or Alternatively for Mistrial and for Sanctions, made in open Court on November 6, 2013, and filed in writing on November 7, 2013 (Dkt. No. 310), is withdrawn and stricken from the record.

70.    This Court retains jurisdiction over this action for the purpose of resolving disputes arising under this Consent Decree, or entering orders modifying this Consent Decree, or effectuating or enforcing compliance with the terms of this Consent Decree.

## XX.  APPENDICES

71.    Appendix A and Appendix B are attached to and part of this Consent Decree.

IT IS SO ORDERED

Dated, entered, and made effective this 47ÿ 'f c{ 'qh'Lwn{ .'42360

_____

KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE

FOR PLAINTIFF UNITED STATES OF AMERICA:

DAVID RIVERA
United States Attorney
Middle District of Tennessee
MICHAEL RODEN
Assistant United States Attorney
110 9th Avenue South
Nashville, Tennessee 37203-3870

SAM HIRSCH
Acting Assistant Attorney General

Dated: 5/23/14

PAUL CIRINO
ANDREW J. DOYLE
DUSTIN J. MAGHAMFAR
Trial Attorneys
United States Department of Justice
Environment and Natural Resources Division
P.O. Box 7611
Washington, D.C. 20044
Telephone:  (202) 514-1542 (Cirino)
Telephone:  (202) 514-4427 (Doyle)
Telephone:  (202) 514-1806 (Maghamfar)
paul.cirino@usdoj.gov
andrew.doyle@usdoj.gov
dustin.maghamfar@usdoj.gov

FOR EPA (continued on next page):

*[signature]* Jy Palm, for                    Dated: 5/23/14

MARY J. WILKES
Regional Counsel and Director
Office of Environmental Accountability
United States Environmental Protection Agency
     Region 4
61 Forsyth Street, SW
Atlanta, GA 30303

OF COUNSEL:

Philip G. Mancusi-Ungaro
Attorney-Advisor
United States Environmental Protection Agency
     Region 4
61 Forsyth Street, SW
Atlanta, GA 30303
(404) 562-9519 (p)
mancusi-ungaro.philip@epa.gov

FOR EPA (continued from previous page):

_____
MARK POLLINS

Dated: _May 15, 2014_

Director, Water Enforcement Division
Office of Environmental and Compliance Assurance
United States Environmental Protection Agency
1200 Pennsylvania Avenue, N.W.
Washington, DC 20004

_____
JAMES VINCH

Dated: _May 14, 2014_

Attorney-Advisor
Office of Enforcement and Compliance Assurance
United States Environmental Protection Agency
1200 Pennsylvania Avenue, N.W.
Washington, DC 20004

FOR DEFENDANTS RICHARDSON M. ROBERTS AND BUCKSNORT RR RANCH LLC:


_____                    Dated: _____5/22/14_____
RICHARDSON M. ROBERTS
2207 Old Hickory Blvd.
Nashville, TN  37215-5309
rich@robertsr.net


_____                    Dated: _____5/22/14_____
BUCKSNORT RR RANCH LLC
By:  Richardson M. Roberts,
       Managing Member
2207 Old Hickory Blvd.
Nashville, TN  37215-5309

29

COUNSEL FOR DEFENDANTS:


JONES HAWKINS & FARMER, PLC


_William B Hawkins_
_____
WILLIAM H. FARMER
WILLIAM BURGIN HAWKINS, III
Jones Hawkins & Farmer, PLC
150 Fourth Avenue North, Suite 1820
Nashville, Tennessee 37219
Telephone: (615) 726-0050
bfarmer@joneshawkinsfarmer.com
whawkins@joneshawkinsfarmer.com

Dated: _____5/23/2014_____